# United States Court of Appeals for the Federal Circuit

---

**ARTHREX, INC.,**
*Appellant*

**v.**

**SMITH & NEPHEW, INC., ARTHROCARE CORP.,**
*Appellees*

---

2017-1239

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2016-00917.

---

Decided: January 24, 2018

---

ANTHONY P. CHO, Carlson, Gaskey & Olds, P.C., Birmingham, MI, argued for appellant. Also represented by DAVID J. GASKEY.

NATHAN R. SPEED, Wolf, Greenfield & Sacks, PC, Boston, MA, argued for appellees. Also represented by RICHARD GIUNTA, MICHAEL N. RADER.

---

Before NEWMAN, DYK, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

DYK, *Circuit Judge.*

In a pending inter partes review proceeding ("IPR") before the Patent Trial and Appeal Board ("the Board"), Arthrex, Inc. disclaimed all claims that were the subject of the petition. The disclaimer occurred before the Board issued an institution decision. The Board then entered an adverse judgment pursuant to 37 C.F.R. § 42.73(b). Arthrex appeals. Because we conclude that the Board acted within the scope of the regulation, we affirm.

BACKGROUND

On April 19, 2016, Smith & Nephew, Inc. and Arthrocare Corp. filed an IPR petition challenging claims 1–9 of U.S. Patent No. 8,821,541 ("the '541 patent"), which is owned by Arthrex. On July 22, 2016, Arthrex disclaimed claims 1–9 of the '541 patent as permitted under 37 C.F.R. § 42.107(e). Arthrex then filed a Preliminary Response, arguing that an IPR should not be instituted because 37 C.F.R. § 42.107(e) states "[n]o *inter partes* review will be instituted based on disclaimed claims." At that point, Arthrex confronted 37 C.F.R. § 42.73(b), which provides:

> A party may request judgment against itself at any time during a proceeding. Actions construed to be a request for adverse judgment include:
>
> (1) Disclaimer of the involved application or patent;
>
> (2) <u>Cancellation or disclaimer of a claim such that the party has no remaining claim in the trial</u>;
>
> (3) Concession of unpatentability or derivation of the contested subject matter; and

(4)  Abandonment of the contest.

37 C.F.R. § 42.73(b) (emphasis added). In order to avoid the entering of an adverse judgment pursuant to 37 C.F.R. § 42.73(b), the Preliminary Response stated that "[b]y filing the statutory disclaimer, Arthrex, Inc. is not requesting an adverse judgment." J.A. 17.

After further briefing, the Board entered an adverse judgment against Arthrex pursuant to 37 C.F.R. § 42.73(b), concluding that "our rules permit the Board to construe a statutory disclaimer of all challenged claims as a request for adverse judgment, even when the disclaimer occurs before the Board has entered a decision on institution." *Smith & Nephew, Inc. v. Arthrex, Inc.*, No. IPR2016-001917, slip op. at 6 (P.T.A.B. Sept. 21, 2016).

When the Board entered an adverse judgment, an estoppel effect attached, as 37 C.F.R. § 42.73(d)(3)(i) precludes a patent owner "from taking action inconsistent with the adverse judgment, including obtaining in any patent . . . [a] claim that is not patentably distinct from a finally refused or canceled claim." At the time of the adverse judgment, Arthrex had two pending continuation patent applications that this estoppel provision would impact. Those two applications have since issued as patents. Arthrex recently filed another continuation application, which remains in prosecution and therefore is affected by the adverse judgment.

Arthrex timely appealed. Smith & Nephew and ArthroCare Corp., the petitioners in the IPR proceeding, moved to dismiss the appeal for lack of subject-matter jurisdiction, arguing that 35 U.S.C. § 319 (providing for appeal from a "final written decision") created the exclusive means of appeal and that the Board did not issue a "final written decision" as required by that section. This court denied the motion, directing the parties "to address in their briefs whether the order on appeal is reviewable

as a final decision." *Arthrex, Inc. v. Smith & Nephew Corp.*, No. 17-1239, Dkt. No. 18 (Fed. Cir. Jan. 31, 2017).

DISCUSSION

I

The first issue is whether the adverse final judgment is appealable. There is no contention that the statutory appeal-bar provision applies here. *See* 35 U.S.C. § 314(d) (stating that institution decisions "shall be final and nonappealable"); *see also Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2139-42 (2016). Rather, the question is whether a statute provides a right to appeal.

We approach this question in light of the general rule that judicial review is presumed to be available with respect to final agency action. The Supreme Court has recognized "the strong presumption that Congress intends judicial review of administrative action." *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015); *see also Cuozzo*, 136 S. Ct. at 2140; Administrative Procedure Act § 10, 5 U.S.C. §§ 701, 704 (providing judicial review for final agency actions unless precluded by statute).

Here, the language of 28 U.S.C. § 1295 appears to provide for appeal.[1] Section 1295(a)(4)(A) provides the Federal Circuit with jurisdiction over "an appeal from a decision of—the Patent Trial and Appeal Board of the United States Patent and Trademark Office with respect to . . . inter partes review under title 35." The adverse judgment in this case is a decision of the Board, and the decision is "with respect to" an inter partes review pro-

---

[1]    We need not decide whether the right to appeal comes directly from § 1295 or in conjunction with § 704 of the APA. Both statutes play a role in defining the reviewability of Board decisions.

ceeding. The judgment is also final, as the judgment terminated the IPR proceeding. *See In re Arunachalam*, 824 F.3d 987, 988 (Fed. Cir. 2016) (holding that § 1295(a)(4)(A) incorporates a finality requirement); *Copelands' Enters., Inc. v. CNV, Inc.*, 887 F.2d 1065, 1067-68 (Fed. Cir. 1989) (en banc) (same).

Smith & Nephew argues, however, that the more specific reference to appeal rights in § 319 should govern; that § 319 only provides for review from a final written decision; and that there has been no final written decision here. Section 319 provides, "A party dissatisfied with the final written decision of the Patent Trial and Appeal Board under section 318(a) may appeal the decision pursuant to sections 141 through 144." 35 U.S.C. § 319.

On its face, § 319 does not cabin the appeal rights conferred by § 1295. However, Smith & Nephew points to language in our previous decision, *St. Jude Medical, Cardiology Division, Inc. v. Volcano Corp.*, 749 F.3d 1373 (Fed. Cir. 2014). *St. Jude* stated that § 1295(a)(4)(A) "is most naturally read to refer precisely to the Board's decision under section 318(a) on the merits of the *inter partes* review, after it 'conducts' the proceeding that the Director has 'instituted.'" *Id.* at 1376. It also stated "[t]he final written decision is the only decision that the statute authorizes a dissatisfied party to appeal." *Id.* at 1374. However, *St. Jude* did not involve a similar situation, and the availability of appeal of final adverse judgment decisions was not directly addressed in that case.

In *St. Jude*, the issue was whether § 1295(a)(4)(A) authorized review of a Board decision declining to institute an IPR or whether such an appeal was barred by § 314(d), which provides, "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." 35 U.S.C. § 314(d). *St. Jude* found that non-institution decisions fall within the "broadly worded bar on appeal" under § 314(d).

749 F.3d at 1376. Thus, the question there was whether the appeal bar foreclosed appellate jurisdiction—a question not involved here. Under these circumstances, we are not bound by the language in *St. Jude.* When a prior decision does not "squarely address[ ] [an] issue," a court remains "free to address the issue on the merits" in a subsequent case. *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see also Automated Merchandising Sys., Inc. v. Lee*, 782 F.3d 1376, 1381 (Fed. Cir. 2015).

Because § 319 does not on its face provide the exclusive means for appeal over IPR decisions not subject to the appeal bar, and § 1295(a)(4)(A) on its face provides a right to appeal, we conclude that a final decision that disposes of an IPR proceeding in the form of an adverse judgment is a "decision" from the Board with respect to IPRs under title 35 and that § 1295 provides a right to appeal a final adverse judgment. This is also not a situation in which § 319 impliedly precludes review under § 1295. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345-48 (1984); *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1357-58 (Fed. Cir. 2012).

## II

The next question is whether the Board properly entered an adverse judgment pursuant to 37 C.F.R. § 42.73(b). At the outset, we note that Arthrex has specifically disclaimed any argument that the regulations are not authorized by the statute.[2] Under these circumstances, we do not decide whether the PTO had authority to

---

[2]    "Q: You're not contending that the PTO doesn't have the authority to adopt a regulation providing for estoppel on the cancellation of a patent or a claim, right? A: That is correct, we are not contending that the Patent Office does not have authority." Oral Arg. at 1:11-1:25.

adopt this regulation. We reserve that issue for another day.

Arthrex argues only that the regulation is inapplicable. It first argues that this is so because Arthrex specifically stated that it was not requesting an adverse judgment. The application of the rule on its face does not turn on the patentee's characterization of its own request, and such a construction would make no sense. If the Board's authority to enter an adverse judgment depended on whether the patent owner requested an adverse judgment, a patent owner could always avoid an adverse judgment by simply stating that it is not requesting one, even with respect to the specific instances articulated in 37 C.F.R. § 42.73(b). This would render the rule a nullity. Moreover, § 42.73(b) gives the Board authority to construe a patent owner's actions as a request for an adverse judgment, suggesting the *Board's* characterization of the action rather than the patent owner's characterization is determinative. The appellant appears to have backed away from this argument in its Reply Brief. Appellant Reply Br. 15 ("But Arthrex never suggested that a Patent Owner could avoid adverse judgment in one of the expressly defined situations of 37 C.F.R. § 42.73(b).").

Arthrex alternatively points out that subsection 2 of 37 C.F.R. § 42.73(b) refers to the cancellation of claims such that there is "no remaining claim in the trial." Arthrex argues that this means that subsection 2 only applies if an IPR proceeding has been instituted. We think the Board's contrary interpretation is consistent with the rule. The rule states that an adverse judgment may be entered after a petition has been filed, but before an IPR proceeding has been instituted. It then states that a patent owner may request an adverse judgment at any time during a "proceeding," 37 C.F.R. § 42.73(b), and the

PTO's rules define "proceeding" as "a trial or preliminary proceeding," which "begins with the filing of a petition for instituting a trial." *Id.* § 42.2.[3]

While the rules define "trial" as requiring "a contested case instituted by the Board based upon a petition," 37 C.F.R. § 42.2, the language of subsection 2 relating to remaining claims "in the trial" can be interpreted as meaning that there is no claim remaining for trial, which occurs when, as here, all of the challenged claims have been cancelled. The purpose of 37 C.F.R. § 42.73(b) is to define the circumstances in which the estoppel provision of 37 C.F.R. § 42.73(d) applies. The purpose of the estoppel provision is to "provide[ ] estoppel against claims that are patentably indistinct from those claims that were lost." Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48,612, 48,649 (Aug. 14, 2012).  For this purpose, there seems to be no meaningful distinction between claims that are cancelled before an IPR proceeding is instituted and claims that are cancelled after an IPR proceeding is instituted.

Additionally, it seems that the subsections of 37 C.F.R. § 42.73(b) should be applied consistently. Subsection 1 states that "[d]isclaimer of the involved application or patent" will be construed as a request for an adverse judgment. There is no time limitation, so this subsection on its face seems to apply at any time during the proceeding. We see no reason why estoppel should apply if a patent owner disclaims an entire patent or application before an institution decision but should not apply if a patent owner merely disclaims some of the claims.  Sub-

---

[3]    Arthrex did not challenge the PTO's promulgation of Rule 42.2, or its interpretation of the term "proceeding" therein.

section 3 similarly contains no time limitation, stating that a "[c]oncession of unpatentability or derivation of the contested subject matter" will be construed as an adverse judgment.

The fact that the other provisions of 37 C.F.R. § 42.73(b) do not expressly turn on whether an IPR proceeding has yet been instituted supports the Board's view that subsection 2 also is not so limited. Because we believe the Board's interpretation of the rule is consistent with its language, and because there has been no challenge to the Board's authority to adopt the rule, we sustain the Board's reading of the regulation.

37 C.F.R. § 42.73(b) permits the Board to enter an adverse judgment when a patent owner cancels all claims at issue after an IPR petition has been filed, but before an institution decision.

## CONCLUSION

We conclude that the Board's decision is appealable, and that the Board's interpretation is consistent with the language of the regulation. We do not reach the questions of whether the regulation is authorized by the statute or whether, if so, it was properly promulgated.

## **AFFIRMED**

### COSTS

No costs.

# United States Court of Appeals
## for the Federal Circuit

_____

**ARTHREX, INC.,**
*Appellant*

**v.**

**SMITH & NEPHEW, INC., ARTHROCARE CORP.,**
*Appellees*

_____

2017-1239

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2016-00917.

_____

O'MALLEY, *Circuit Judge*, concurring.

I agree with Judge Dyk that we have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) to review the Board's adverse judgment against Arthrex, and I agree that the Board's interpretation of 37 C.F.R. § 42.73(b) is consistent with the text of that regulation. I write separately to point out that I have doubts about whether the Director had the authority under 35 U.S.C. § 316 (or any other statutory provision) to issue that regulation or whether, if so, the regulation was properly promulgated.

The Board relied on 37 C.F.R. § 42.107(e), which states that "[n]o *inter partes* review will be instituted based on disclaimed claims," in explaining its grant of adverse judgment against Arthrex. As Arthrex notes in

its citation to supplemental authority, the Board recently designated as precedential a portion of a decision denying a request for rehearing in which the Board determined that covered business method ("CBM") review cannot be instituted based on statutorily disclaimed claims. *Facebook, Inc. v. Skky, LLC*, No. CBM2016-00091, 2017 WL 4349404, at *3 (P.T.A.B. Sept. 28, 2017) (designated precedential as to Section II.B.2). According to the Board, our case law requires that statutorily disclaimed claims must be treated as if they never existed and therefore those claims cannot support institution of CBM review. *Id.* I believe this same logic applies to the institution of inter partes review on disclaimed claims. And, if the Board lacks the authority to institute review based on statutorily disclaimed claims, as § 42.107(e) and *Facebook* seem to indicate, it is unclear to me why the Board would have the authority to take any other action—particularly prior to institution—with respect to disclaimed claims.

I question the Board's authority to issue adverse judgments prior to institution for another reason. 37 C.F.R. § 42.73(b) explains that "[a] party may request judgment against itself at any time during a *proceeding*." (emphasis added). The PTO has defined the term "proceeding" broadly, to encompass both the trial and a "preliminary proceeding," the period of time beginning with the filing of the petition and ending with the institution decision. 37 C.F.R. § 42.2. As we explained in *Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016), however, "[t]he IPR does not begin until it is instituted." The PTO's expansive definition for "proceeding," and the Board's application of that definition to the practice of issuing adverse judgments prior to institution, seem to conflict with our conclusion in *Shaw*.

I also am skeptical that the framework of the Leahy-Smith America Invents Act ("AIA") provides the Board with the necessary authority to issue adverse judgments

based on statutory disclaimers prior to institution of inter partes review.  The AIA does not address procedural actions before institution beyond the filing of a petition and the patent owner's response, should the patent owner wish to submit one.  35 U.S.C. §§ 311–13.  Nor does the process of institution itself mention or contemplate the issuance of adverse judgments.  *Id.* § 314.  And I note that the estoppel provision of the AIA, § 315, does not address estoppel arising from pre-institution adverse judgments— it addresses estoppel arising following the issuance of a final written decision under § 318.  Section 316(c) explains that the Board "shall, in accordance with [35 U.S.C. § 6], *conduct* each inter partes review instituted under this chapter"; it does not grant the Board the rulemaking authority to, in effect, make patentability determinations with estoppel effect—particularly prior to institution.  *Id.* § 316(c) (emphasis added); *see also* 35 U.S.C.  § 6(b)(4)  (providing  that  the  Board "shall . . . *conduct* inter partes reviews and post-grant reviews pursuant to chapters 31 and 32." (emphasis added)).

Because Arthrex affirmatively disclaimed any such statutory or administrative law challenge to the Board's reliance on 37 C.F.R. § 42.73(b), however, we may not reach those questions in this case.  This is particularly so because, in light of the disclaimer of these questions, neither party briefed or argued them.  We, thus, must save these inquiries for another day—one where the relevant questions are raised and adequately analyzed by the parties.

# United States Court of Appeals for the Federal Circuit

---

**ARTHREX, INC.,**
*Appellant*

**v.**

**SMITH & NEPHEW, INC., ARTHROCARE CORP.,**
*Appellees*

---

2017-1239

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2016-00917.

---

NEWMAN, *Circuit Judge*, dissenting.

The Petitioners' request for *inter partes* review was not "instituted" because the patentee, Arthrex Inc., disclaimed all of the challenged claims before the PTAB decided whether to institute the requested review. Thus *inter partes* review could not be instituted, for no challenged claims remained in the patent. *See* 37 C.F.R. § 42.107(e):

> No *inter partes* review will be instituted based on disclaimed claims.

Nonetheless, the PTAB issued an adverse judgment on the disclaimed claims. The parties agree—a position apparently shared by the panel majority—that this adverse judgment subjects Arthrex to the estoppel provi-

sions of 37 C.F.R. § 42.73(d)(3); that is, Arthrex would be subject to the same estoppel result as if there had been an IPR trial and Arthrex had lost on the merits.

From this flawed statutory and regulatory interpretation, I respectfully dissent.

## DISCUSSION

Soon after Smith & Nephew, Inc. filed a petition for *inter partes* review of claims 1–9 of U.S. Patent No. 8,821,541 ("the '541 patent"), Arthrex disclaimed all of the challenged claims. *Inter partes* review was no longer available, *see* 37 C.F.R. § 42.107(e), *supra*. The PTAB then entered an "adverse judgment" on claims 1–9, although no review was conducted of those claims, and none could be conducted after the disclaimer. My colleagues incorrectly hold that this action is in conformity with statute and regulation.

The PTO accompanied the America Invents Act with the issuance of Rules, including 37 C.F.R. § 42.73(b) concerning "[a]ctions construed to be a request for adverse judgment." This Rule states that such actions include:

(1) Disclaimer of the involved application or patent;

(2) Cancellation or disclaimer of a claim such that the party has no remaining claim in the trial;

(3) Concession of unpatentability or derivation of the contested subject matter; and

(4) Abandonment of the contest.

I emphasize the words in the trial in subsection (2) because this is an explicit limitation, not included in the other subsections. Here there was no trial, and no trial was possible after the disclaimer of claims 1–9, for institution of trial was not possible. Subsection 42.73(b)(2), by

its terms, makes clear that it relates to procedures "in the trial;" it has no relevance to the institution phase.

I also note that Arthrex explicitly stated to the PTAB that it "is not requesting an adverse judgment," for Arthrex states that the PTAB had been applying this Rule inconsistently. The PTAB then entered an adverse judgment, conflicting with the Rule.

A further conflict arises in the PTAB's issuance of this "final decision," for final decision on *inter partes* review, as authorized by 35 U.S.C. § 318, applies upon PTAB trial of patentability, a trial that cannot occur when trial is not "instituted." Adverse judgment against disclaimed claims without institution of trial is not available by statute, and is contrary to the PTO Rule directed to this event.

## I. Agency Compliance with Statute and Rules

An administrative agency must comport with its authorizing statute, and the PTO's practices and regulations must implement the statutory purpose. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) ("Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law.") (internal quotations omitted); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress.").

The judicial obligation is to assure agency compliance with its legislated authority. *See Nat'l Broad. Co. v. United States*, 319 U.S. 190, 224 (1943) ("Our duty is at an end when we find that the action of the Commission was based upon findings supported by evidence, and was made pursuant to authority granted by Congress. It is not for us to say that the 'public interest' will be furthered

or retarded by the [regulation].").  Here the PTAB stated that "our rules" authorize an adverse judgment in the absence of institution and the absence of trial.  That is incorrect, for Rule 42.73(b) is explicit as to when such an adverse judgment is authorized, and Rule 42.73(b)(2), the only subsection directed to disclaimed or cancelled claims, refers to adverse judgment only when there is "no remaining claim *in the trial.*"  Here, there was no trial, and no trial was possible.

Arthrex observes that some PTAB decisions have held that such an adverse judgment "creates an estoppel that would limit Arthrex's rights as to future patent claims in continuing applications."  Arthrex Br. 3.  This consequence makes it imperative that the PTAB's rules conform to the legislative intent, and are implemented in accordance with their text, so that the concerned public will know the consequences of its choices.

The language of 37 C.F.R. § 42.73(b)(2) forecloses the interpretation the panel majority ascribes.  Subsection (b)(2) states that adverse judgment may be entered on: "[c]ancellation or disclaimer of a claim such that the party has no remaining claim in the trial."  PTO regulations define PTAB "trial" as meaning "a contested case instituted by the Board based upon a petition."  37 C.F.R. § 42.2.  Accordingly, the language of § 42.73(b)(2) is "[c]ancellation or disclaimer of a claim such that the party has no remaining claim in a contested case instituted by the Board based upon a petition."

Subsection (b)(2) on its face is directed to disclaimer or cancellation "in the trial."  It is not disputed that "in the trial" can occur only after institution.  "[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms."  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)) (internal quotations omitted).

Claims 1–9 were disclaimed before institution. Accordingly, the present situation is outside of subsection (b)(2), for there was no trial and no possibility of trial. As required by § 42.107(e), "no *inter partes* review will be instituted based on disclaimed claims." That regulation was applied by the PTAB, and no *inter partes* review was instituted. Without institution there can be no trial, and without trial there can be no final written decision under 35 U.S.C. § 318, and no adverse judgment based upon 37 C.F.R. § 42.73(b)(2).

The inclusion of "in the trial" in subsection (b)(2) is a critical distinction from the other subsections, which do not distinguish between institution and trial. This distinction cannot be ignored. "Where an agency includes particular language in one section of a regulation but omits it in another it is generally presumed that the agency acts intentionally and purposely in the disparate inclusion or exclusion." *Yonek v. Shinseki,* 722 F.3d 1355, 1359 (Fed. Cir. 2013) (alterations omitted).

The PTAB's interpretation of subsection (b)(2) to eliminate the words "in the trial" is an explicit change in the Rule, requiring rulemaking procedures. Such rule change is governed by the Administrative Procedure Act, *see* 35 U.S.C. § 2(b)(2)(B), for it is a substantive change in statutory interpretation and administration. And, according to Arthrex, it is inconsistently applied among PTAB panels. Situations "where interested parties would have had to divine the Agency's unspoken thoughts" regarding a regulation casts serious doubts on the propriety of the rulemaking. *See Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1260 (D.C. Cir. 2005) (alterations and quotation marks omitted).

Instead, the majority attempts to reconcile the PTAB's decision by interpreting § 42.73(b)(2)'s statement of "no remaining claim <u>in the trial</u>" as meaning "no re-

maining claim <u>for trial</u>." Maj. Op. at 8. Thus, my colleagues construe the words "in the trial" as including non-institution where no trial is possible. This is a distortion of a carefully worded regulation, and changes its meaning. However, "a court is not free to disregard requirements simply because it considers them redundant or unsuited to achieving the general purpose in a particular case." *C.I.R. v. Gordon*, 391 U.S. 83, 93 (1968).

Our task is to assure that agency regulations conform to the statute, and that the regulations are applied in accordance with that conformity. *See E.P.A. v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1600 (2014) ("However sensible (or not) the Court of Appeals' position, a reviewing court's task is to apply the text [of the regulation], not to improve upon it.") (internal quotations omitted). A cardinal principle of statutory and regulatory construction is to "'give effect, if possible, to every clause and word.'" *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)); *see Roberto v. Dep't of the Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) ("The rules of statutory construction apply when interpreting an agency regulation.").

The panel majority ignores the differences among the subsections of Rule 42.73(b), and states that the rule allows that "an adverse judgment may be entered after a petition has been filed, but before an IPR proceeding has been instituted." Maj. Op. at 8. What is clear is the contrary, for there can be no adverse judgment "before an IPR proceeding has been instituted." *St. Jude Medical v. Volcano Corp.*, 749 F.3d 1373 (Fed. Cir. 2014).

The statutory design of the America Invents Act is that when institution is denied, the IPR does not proceed to trial and decision, and the consequences of a final decision do not arise. The legislative record is clear as to those consequences, *see* H.R. REP. 112-98, 48, 2011 U.S.C.C.A.N. 67, 78 ("[A] final decision in a post-grant

review process will prevent the petitioner, a real party in interest, or its privy from challenging any patent claim on a ground that was raised in the post-grant review process. The post-grant review procedure is not intended, however, to inhibit patent owners from pursuing the various avenues of enforcement of their rights under a patent, and the amendment makes clear that the filing or institution of a post-grant review proceeding does not limit a patent owner from commencing such actions.").

The PTAB's Rule as now interpreted is contrary to the statute. And although the Rule states that a patentee may request an adverse judgment at any time, here the patentee expressly requested no adverse judgment. My colleagues' view that estoppels can nonetheless be involuntarily imposed by the PTAB when no claims were subject to trial exceeds the PTAB's statutory authority. Such looseness simply adds to the uncertainties facing practitioners seeking to comply with the Rules implementing the America Invents Act.

The PTO Rules of Practice for Trials Before the PTAB refer to estoppels flowing from "those claims that were lost." 77 Fed. Reg. 48,612, 48,649 (Aug. 14, 2012). These Rules are contradicted by the majority's holding that "there seems to be no meaningful distinction between claims that are cancelled before an IPR proceeding is instituted and claims that are cancelled after an IPR proceeding is instituted." Maj. Op. at 8. To the contrary: there is a powerful distinction. The foundation of the AIA is the distinction between the threshold determination of whether to "institute" trial, and the trial proceedings and ensuing estoppels after trial.

Arthrex is not challenging the PTO's authority to adopt relevant regulations; Arthrex states in its brief that "Arthrex never suggested that a Patent Owner could avoid adverse judgment in one of the expressly defined situations of 37 C.F.R. § 42.73(b)." Arthrex Reply Br. 15.

The panel majority ignores the differences among these "expressly defined situations," and rewrites § 42.73(b)(2) to eliminate the words "in the trial." Neither the PTAB panel nor my colleagues comply with the legislative distinction among the subsections of § 42.73(b).

## II. Prior Adjudication

I take note of the district court litigation between these parties, on claims 10–11 of the same '541 patent. That case had not been stayed by the district court, and validity of claims 10–11 was sustained. Both Arthrex and Smith & Nephew state uncertainty arising from the PTAB's ruling herein, bringing into further focus the need for reliable regulations, consistently applied.[1]

CONCLUSION

When all of the claims for which the Petitioners sought review were disclaimed before the PTAB instituted trial, the PTAB's authority to render adverse judgment did not arise. From my colleagues' endorsement of the PTAB's flawed interpretation of its Rule, I respectfully dissent.

---

[1]    The parties have apprised the court of the PTAB's recent action in declaring "precedential" its ruling that covered business method ("CBM") review cannot be conducted on disclaimed claims. *Facebook, Inc. v. Skky, LLC*, No. CBM2016-00091, 2017 WL 4349404, at *3 (P.T.A.B. Sept. 28, 2017). The PTAB held that disclaimed claims "must be treated as if they never existed," *id.* at *5; thus the claims at issue here cannot be subject to a final adverse judgment. The majority's decision here conflicts with this ruling, reinforcing the view that the issue of pre-institution disclaimer requires attention.