# United States Court of Appeals for the Federal Circuit

---

**SECURITY PEOPLE, INC.,**
*Plaintiff-Appellant*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE, UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendants-Appellees*

---

2019-2118

---

Appeal from the United States District Court for the Northern District of California in No. 4:18-cv-06180-HSG, Judge Haywood S. Gilliam, Jr.

---

Decided: August 20, 2020

---

FREAR STEPHEN SCHMID, San Francisco, CA, for plaintiff-appellant.

LEIF ERIC OVERVOLD, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for defendants-appellees. Also represented by SCOTT R. MCINTOSH, ETHAN P. DAVIS; DAVID L. ANDERSON, United States Attorney's Office, San Francisco, CA; MARY L.

KELLY, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

————————————

Before LOURIE, WALLACH, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Security People, Inc., appeals the district court's dismissal of its Administrative Procedure Act suit challenging the constitutionality of the cancellation of its patent in an inter partes review proceeding. Because Congress foreclosed the possibility of collateral APA review of inter partes review decisions by district courts, and because Security People cannot bring an APA challenge when the statutory scheme separately establishes an adequate remedy in a court for its constitutional challenge, we affirm the district court's dismissal.

I

In this suit against the United States Patent and Trademark Office and its Director (collectively, the PTO), Security People seeks a declaratory judgment that the retroactive application of an inter partes review (IPR) proceeding to cancel claims of its patent violated its constitutional rights, namely its Fifth Amendment due process right.

Security People obtained U.S. Patent No. 6,655,180, "Locker Lock with Adjustable Bolt," in 2003. After being sued for patent infringement, a competitor of Security People petitioned for review of certain claims of the '180 patent in April 2015. The Patent Trial and Appeal Board then instituted an IPR, s*ee Ojmar US, LLC v. Sec. People, Inc.*, No. IPR2015-01130, 2015 WL 6510359 (P.T.A.B. Oct. 27, 2015), and issued a final written decision finding the sole instituted claim unpatentable, s*ee* Final Written Decision,

*Ojmar US, LLC v. Sec. People, Inc.*, No. IPR2015-01130 (P.T.A.B. Dec. 12, 2016).

Security People appealed the Board's decision to this court, raising only issues related to the patentability of the '180 patent. *See* Brief for Appellant at 2, *Sec. People, Inc. v. Ojmar US, LLC*, No. 2017-1385 (Fed. Cir. Mar. 16, 2017), ECF No. 16. We summarily affirmed the Board's decision. *Sec. People, Inc. v. Ojmar US, LLC*, 702 F. App'x 982 (Fed. Cir. 2017). The Supreme Court then denied Security People's petition for certiorari, which also did not raise any constitutional arguments. *Sec. People, Inc. v. Ojmar US, LLC*, 138 S. Ct. 2681 (2018); Petition for Writ of Certiorari, *Sec. People, Inc.*, 138 S. Ct. 2681 (No. 17-1443). A few months after the Supreme Court denied certiorari, Security People filed the suit from which this appeal arises in the Northern District of California.

The PTO responded to the complaint by moving to dismiss the suit on three grounds: (1) the district court lacked subject matter jurisdiction because Congress established a specific means for judicial review of IPR decisions, rendering collateral APA suits in district court inappropriate; (2) Security People failed to state a claim because it is barred from raising arguments it could have raised in an earlier proceeding; and (3) Security People failed to state a claim because precedent renders its claim meritless.

The district court agreed with the PTO on the first ground, dismissing the suit for lack of subject matter jurisdiction. *See Sec. People, Inc. v. Iancu*, No. 18-cv-06180-HSG, slip op. at 4 (N.D. Cal. Jun. 10, 2019), ECF No. 28, (*Decision*). The court reasoned that because the America Invents Act (AIA)—codified in relevant part at 35 U.S.C. §§ 319, 141(c)—provides for "broad Federal Circuit review" of the Board's final written decisions, *see Decision* at 3, but allows for review "only" in the Federal Circuit, *see* § 141(c), Congress discernibly intended to preclude district court review of Board decisions under the APA. *Decision* at 3

(citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)).  Because the Federal Circuit is "fully capable of providing meaningful review" of any constitutional challenges to the Board's decision, *Decision* at 3 (quoting *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10 (2012)), Security People should have "proceed[ed] exclusively through the statutory review scheme," *id.* (citing *Elgin*, 567 U.S. at 10).  The district court thus held that it lacked subject matter jurisdiction over Security People's claim.  *Id.*

Security People timely appealed.  We have jurisdiction under 28 U.S.C. § 1295(a)(1).  We review de novo a district court's dismissal of APA claims against the PTO.  *Odyssey Logistics & Tech. Corp. v. Iancu*, 959 F.3d 1104, 1108 (Fed. Cir. 2020) (citing *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1354 (Fed. Cir. 2012)).

## II

Security People contends that the district court made two errors in holding that Security People could only raise its constitutional challenge in this court on direct review of the Board decision.  First, Security People argues that the Board lacks authority to consider constitutional claims, and that it could not then assert a constitutional challenge for the first time on appeal because retroactivity challenges raise issues requiring factual resolution.  Second, Security People argues that its as-applied challenge was not yet ripe until cancellation of its patent claims, which required affirmance of the Board's decision by this court, and that it had to exhaust those non-constitutional claims before raising its constitutional claims.  We disagree:  Security People's arguments misapply fundamental concepts of administrative law.

## A

We first reject Security People's argument that, because the Board purportedly lacks the authority to decide constitutional claims, constitutional questions raised by an

IPR final written decision must be reviewable in district court under the APA. Even accepting as true Security People's assertion that the Board may not decide a constitutional question, this court—which Congress designated to conduct judicial review of the Board's final written decisions—can meaningfully address constitutional questions on appeal. *See Elgin*, 567 U.S. at 17 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994)).[1] "It is not unusual for an appellate court reviewing the decision of an administrative agency to consider a constitutional challenge to a federal statute that the agency concluded it lacked authority to decide." *Id.* at 18 n.8; *see, e.g., Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1312 (Fed. Cir. 2003) ("Whether the [MSPB] should have considered Briggs's constitutional arguments is an issue we need not

---

[1]    For this reason, Security People's exhortation of the dispositive value of *Free Enterprise Fund* is misplaced. In *Free Enterprise Fund*, the Supreme Court concluded that the district court retained jurisdiction over an APA challenge to an agency determination because the statutory scheme at issue included several provisions precluding "meaningful judicial review" of the party's "constitutional claims" on direct appeal; the suit was "wholly collateral" to the agency determination; and the claims were "outside the agency's expertise." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489–90 (2010). Because this court can provide meaningful judicial review of constitutional claims arising from IPR final written decisions, that is not the case here. Further, *Elgin* expressly rejected a petitioner's invocation of *Free Enterprise Fund* to suggest that the Merit Systems Protection Board could not provide adequate judicial review of its constitutional claims because of the MSPB's lack of constitutional law expertise. *See Elgin*, 567 U.S. at 15–16.

decide. . . . [W]e may consider his arguments and decide the constitutionality of the Hatch Act in this appeal.").

The presence of disputed factual questions does not change that calculus. *Elgin* remains instructive. Like Security People does here, the *Elgin* petitioners argued that "even if the Federal Circuit could consider their claims in the first instance, resolution of the claims requires a factual record that neither the [administrative tribunal] (because it lacks authority to decide the legal question) nor the Federal Circuit (because it is an appellate court) can create." *Elgin*, 567 U.S. at 19. The Supreme Court rejected this argument. It held that the statutory review scheme at issue in that case—the Civil Service Reform Act, which provides this court exclusive jurisdiction to review MSPB decisions—"fully accommodates an [appellant's] potential need to establish facts relevant to [its] constitutional challenge to a federal statute." *Id.*

The Court gave two examples of how the statutory scheme accommodated factfinding for a constitutional challenge on appeal. The Court noted that "[e]ven without factfinding capabilities, the Federal Circuit may take judicial notice of facts relevant to the constitutional question." *Id.* Our authority to take judicial notice of facts remains the same in appeals from the PTAB as from the MSPB. *See, e.g.*, *L.A. Biomedical Rsch. Inst. at Harbor-UCLA Med. Ctr. v. Eli Lilly & Co.*, 849 F.3d 1049, 1061 n.6 (Fed. Cir. 2017) (noting that this court can properly take judicial notice of certain facts in an appeal from the PTAB).

The Court then explained that—for the rare occasions when a constitutional claim "requires the development of facts beyond those that [we] may judicially notice"—"the [Civil Service Reform Act] empowers the MSPB to take evidence and find facts for Federal Circuit review." *Elgin*, 567 U.S. at 19 (citing 5 U.S.C. § 1204(b)(1)–(2) (empowering MSPB members, administrative law judges, and designated employees to administer oaths, examine witnesses,

take depositions, receive evidence, issue subpoenas for both persons and evidence, and order depositions)).  The PTAB has similar fact-finding authority to the MSPB, also allowing it to resolve disputed factual questions, even if it cannot decide the legal question for which those factual questions are relevant.  *See* 35 U.S.C. §§ 24 (providing for the issuance of subpoenas in contested cases before the PTO), 316(a)(5) (authorizing the PTO Director to promulgate regulations for discovery of relevant evidence in IPRs, including "what is otherwise necessary in the interest of justice"); 37 C.F.R. § 42.100(a) ("An inter partes review is a trial subject to the procedures set forth in [37 C.F.R. §§ 42.1–42.80]."); *see also* 37 C.F.R. §§ 42.52 (governing the compulsion of testimony by the Board), 42.53 (providing procedures for taking both compelled and uncompelled testimony).

B

Second, we disagree with Security People's argument that it could only raise its constitutional challenge after this court had affirmed the Board's final written decision and the PTO had issued a certificate canceling its patent claim.  Security People asserts that, for the purposes of a Fifth Amendment due process claim, no deprivation of property had occurred until after the PTO issued the certificate canceling its patent claim.  This assertion misapprehends the law defining when an agency action becomes final for judicial review.  "The core question [of the finality of agency action] is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).  The PTO's decision-making process in an IPR is complete after issuance of the final written decision (or, if parties move for reconsideration, after the Board issues its decision on reconsideration).  The final written decision serves as the agency action that will directly affect the parties.

Judicial review of the final written decision may result in remand of the case to the agency for correction, or even reversal of the agency decision.  But a judicially mandated outcome occurring because of judicial review intrinsically is not agency decision-making.  *See, e.g.*, 5 U.S.C. § 701(b)(1)(B) (defining "agency" to exclude "the courts of the United States").  And the certificate of cancellation is irrelevant to the finality of the agency's action, as no agency decision-making is involved in deciding to issue the certificate.  Issuing the certificate of cancellation is a non-discretionary formality:  the PTO is statutorily compelled to "publish a certificate canceling any claim of the patent finally determined to be unpatentable" in a final written decision.  35 U.S.C. § 318(b).

Nor did the doctrine of administrative exhaustion prevent Security People from raising its constitutional claims on direct appeal to the Federal Circuit.  That doctrine "provides that judicial relief is not available for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1192 (Fed. Cir. 2018).  If, as Security People asserts, the Board lacked authority to decide Security People's constitutional challenges, then no administrative remedy exists and Security People faced no obstacle to judicial relief of its constitutional claims on direct appeal from the final written decision.  And if the Board does have authority to decide Security People's constitutional claims, then Security People's failure to raise those claims before the Board would lead to it forfeiting those claims, not it gaining the ability to raise those claims in district court under the APA.[2] *See Pers. Audio, LLC v. CBS Corp.*,

---

[2]    Further, if the Board did have authority to decide Security People's constitutional claims, Security People's opportunity for administrative remedy of its challenge

946 F.3d 1348, 1351 (Fed. Cir. 2020) (explaining that "[t]he exclusive vehicle for bringing" "challenges to the lawfulness of the Board's final written decision," including on "constitutional bases," "is a direct appeal to this court from the final written decision").[3]

---

ended when it declined to file a motion for reconsideration of the final written decision. After that, it could receive only judicial relief in this court from the final written decision.

[3] Security People also appears to imply that, under the constitutional avoidance doctrine, it could not have raised constitutional challenges to the final written decision until this court denied its statutory arguments for relief from the final written decision. This argument misunderstands the courts' exercise of constitutional avoidance. As relevant here, constitutional avoidance imparts a "principle governing the prudent exercise of [federal courts'] jurisdiction," *Escambia Cty., Fla. v. McMillan*, 466 U.S. 48, 51 (1984)—not a limitation on the remedies an appellant may request from a court. If the appellant succeeds on the merits of its non-constitutional arguments, the constitutional question may become moot. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."). But the possibility that a tribunal may not decide a constitutional claim does not absolve an appellant of its obligation to raise that claim when it had the opportunity to assert the claim before a tribunal with jurisdiction to provide relief. *See Henderson v. United States*, 568 U.S. 266, 271 (2013) ("'[A] constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right

III

A

More generally, we agree with the district court that the statutes providing for exclusive review of the Board's final written decisions in this court preclude district courts from exercising APA jurisdiction over claims challenging the constitutionality of a final written decision. "[A] statutory scheme of administrative review followed by judicial review in a federal appellate court [can] preclude[] district court jurisdiction over a plaintiff's statutory and constitutional claims" if "Congress' intent to preclude district court jurisdiction [is] 'fairly discernible in the statutory scheme.'" *Elgin*, 567 U.S. at 9–10 (quoting *Thunder Basin,* 510 U.S. at 207). "To determine whether it is 'fairly discernible' that Congress precluded district court jurisdiction over [Security People's] claims, we examine the [statute's] text, structure, and purpose." *Id.* at 10.

The text of 35 U.S.C. § 141(c) makes evident Congress's intent to preclude district court judicial review of IPR final written decisions. "A party to an inter partes review . . . who is dissatisfied with the final written decision of the Patent Trial and Appeal Board . . . may appeal the Board's decision *only* to the United States Court of Appeals for the Federal Circuit." § 141(c) (emphasis added). In limiting the possible forums for judicial review to this court, § 141(c) provides for our exclusive review of the Board's final written decisions. And § 141(c) calls for our comprehensive review of final written decisions, allowing a party to appeal if "dissatisfied with the final written decision."[4]

---

before a tribunal having jurisdiction to determine it.'" (quoting *United States v. Olano*, 507 U.S. 725, 731 (1993))).

[4] Congress has shown that it knows how to narrow the scope of our review of administrative tribunals'

The structure of the statutory scheme also reveals congressional intent to preclude district court review of IPR decisions. Congress carefully considered the availability of judicial review in the AIA, opting to foreclose all judicial review of certain PTAB decisions in IPRs. *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2141 (2016) ("The text of [35 U.S.C. § 314(d)], along with its place in the overall statutory scheme, its role alongside the [APA], the prior interpretation of similar patent statutes, and Congress' purpose in crafting inter partes review, all point in favor of precluding review of the Patent Office's institution decisions."). When it did not foreclose judicial review of Board decisions entirely, Congress channeled review exclusively to this court. Congress integrated this exclusive Federal Circuit review of IPR final written decisions into the intricate existing statutory structure for judicial review of Board decisions, which allows for judicial review in only the Federal Circuit or the Eastern District of Virginia. *Cf. Pregis Corp. v. Kappos*, 700 F.3d 1348, 1359 (Fed. Cir. 2012) ("The carefully balanced framework of the Patent Act specifies a well-defined process for how, when, where, and by whom PTO patentability determinations may be challenged."); *see* 35 U.S.C. §§ 141, 145. "That Congress declined to include an exemption from Federal Circuit review for challenges to a statute's constitutionality indicates that Congress intended no such exception." *Elgin*, 567 U.S. at 13.

---

decisions when it wishes to do so. *See, e.g.*, 38 U.S.C. § 7292 (limiting Federal Circuit review of decisions of the Court of Appeals for Veterans Claims to determining only "the validity of a decision of the [Veterans Court] on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the [Veterans Court] in making the decision").

Like the statutory schemes in *Thunder Basin* and *Elgin*, the AIA "does not foreclose all judicial review of . . . constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit," which "is fully capable of providing meaningful review" of the types of constitutional claims asserted here. *Elgin*, 567 U.S. at 10.

B

"[T]he APA authorizes judicial review of final agency actions only if 'there is no other adequate remedy in a court.'" *Pregis*, 700 F.3d at 1356 (quoting 5 U.S.C. § 704). The agency action here—the final written decision of an IPR—is reviewable by statute, but in the Federal Circuit, not in an APA-based collateral attack in a district court. And, as explained above, the judicial review afforded Security People in this court under 35 U.S.C. § 141(c) offers an adequate remedy for any meritorious constitutional claims. *Cf. Pregis*, 700 F.3d at 1360 (holding that a party aggrieved by the result of an inter partes reexamination had an adequate remedy in a court because it "may obtain judicial review of . . . [a reexamination] decision . . . by appealing to the Board and then, if necessary, to this court").

"When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). The APA cannot furnish the cause of action Security People asserts here—a collateral attack on an agency decision for which it has already had the opportunity for comprehensive review. "Allowing [patentees] to collaterally attack [IPR decisions] through suits under the APA would destroy the Patent Act's careful framework for judicial review at the behest of particular persons through particular procedures." *Pregis*, 700 F.3d at 1359.

### III

We have considered the parties' remaining arguments and find them unpersuasive. The district court's dismissal of Security People's suit is

**AFFIRMED**