**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 16, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

NEW MEXICO ENVIRONMENT
DEPARTMENT; JAMES KENNEY,
Secretary, in his official capacity,

    Defendants - Appellees.

No. 22-2132
(D.C. No. 2:19-CV-00046-KG-SMV)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

The Resource Conservation and Recovery Act ("RCRA") authorizes the

Environmental Protection Agency ("EPA") to regulate the disposal of hazardous

waste.  Under RCRA, subject to EPA approval, states may administer their own

hazardous-waste disposal regimes.  *See* 42 U.S.C. § 6926(b).  To facilitate states'

enforcement of their regimes against federal entities, Congress supplemented RCRA

with a sovereign-immunity waiver subjecting federal entities to state requirements,

"both substantive and procedural," regarding the control, abatement, disposal, and

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

management of hazardous waste "in the same manner, and to the same extent, as any [other] person."  42 U.S.C. § 6961(a); *see* Federal Facility Compliance Act of 1992, Pub. L. No. 102–386, 106 Stat. 1505 (1992).

The EPA has approved New Mexico's regime, known as the Hazardous Waste Act ("HWA").  40 C.F.R. § 272.1601.  The HWA applies by operation of 42 U.S.C. § 6961(a) to Cannon Air Force Base ("Cannon"), a federal facility near Clovis, New Mexico.  Cannon sued the New Mexico Environment Department ("NMED") in federal district court, claiming that certain requirements of Cannon's latest HWA permit exceeded the regulatory authority that § 6961(a) confers on New Mexico and, consequently, effectively trespassed beyond the boundaries of RCRA's waiver of Cannon's sovereign immunity.  Under N.M. STAT. ANN. § 74-4-14(A), the HWA vests jurisdiction in the New Mexico Court of Appeals to resolve challenges to final administrative actions of the NMED.  Nevertheless, Cannon maintains that federal jurisdiction is proper under 28 U.S.C. § 1345 because its challenge to HWA's permit amounts to a "civil action[] . . . commenced by the United States."

This appeal presents the following jurisdictional question: does 42 U.S.C. § 6961(a)'s procedural-requirements language include state judicial-review mechanisms that mandate exclusive state-court jurisdiction over challenges to state administrative action?  The district court concluded that (1) state judicial-review mechanisms are procedural requirements, so (2) § 6961(a) subjects federal entities to state judicial-review mechanisms implicated by § 6926(b), even where those mechanisms provide for exclusive state-court jurisdiction, and therefore (3) § 6961(a)

2

impliedly repeals § 1345. In the alternative, the district court determined that, even if it could properly exercise jurisdiction under § 1345, abstention was appropriate under the *Colorado River* doctrine.[1] Consequently, the district court held that it lacked § 1345 jurisdiction and *sua sponte* dismissed Cannon's complaint.

We conclude the district court erred and hold that state judicial-review provisions are *not* procedural requirements under § 6961(a). We likewise reject the district court's alternative holding that the *Colorado River* doctrine justified its abstention from the exercise of § 1345 jurisdiction. We thus **reverse** the district court's dismissal and **remand** for further proceedings.

Our decision proceeds in five parts. First, we recount the relevant factual and procedural background. Second, we acknowledge our jurisdiction and state the applicable standards of review. Third, we address and reject the district court's conclusion that it lacked § 1345 jurisdiction to hear Cannon's HWA challenge. Fourth, we consider and express our disagreement with the district court's *Colorado River* analysis. Fifth, we conclude.

## I

### A

Cannon Air Force Base sits atop the Llano Estacado, approximately thirty thousand square miles of arid tablelands, bounded by Texas's Caprock Escarpment to

---

[1] *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–21 (1976).

the east and New Mexico's Mescalero Ridge to the west.  Cannon shares its perch on these stockaded plains with the town of Clovis.

Since the 1970s, Cannon has utilized foam containing perfluoroalkyls chemicals or PFAS, colloquially known as "forever chemicals," to extinguish fires on the base.  Runoff from Cannon's PFAS use has leached into nearby Clovis's groundwater.  This case concerns the State of New Mexico's attempts to address Cannon's PFAS pollution.

RCRA, enacted by Congress in 1976, authorizes the EPA to regulate disposal of "solid" and "hazardous" wastes.  42 U.S.C. § 6901 *et seq.*  More specifically, RCRA requires the EPA to "promulgate regulations identifying the characteristics of hazardous waste, and listing particular hazardous wastes . . . , which shall be subject to" the rigorous cradle to grave waste management provisions of RCRA Subtitle C. 42 U.S.C. § 6921.  Although the EPA has proposed rules that would list PFAS as a hazardous constituent subject to RCRA regulations, *see* 89 Fed. Reg. 8606 (Feb. 8, 2024), the EPA has yet to formally designate PFAS as a "hazardous waste."

However, RCRA offers states the option of administering and enforcing their own hazardous-waste disposal programs with RCRA's imprimatur, subject to EPA approval.  42 U.S.C. § 6926(b).  To ensure that state RCRA enforcement actions have "the same force and effect" as EPA enforcement actions, 42 U.S.C. § 6926(d), Congress supplemented RCRA with a waiver of sovereign immunity entitling states to enforce their RCRA regimes against federal polluters like Cannon.  *See* 42 U.S.C. § 6961(a).

4

While RCRA demands that state waste management programs satisfy certain federal minima, the statute "does not preclude a state from adopting more stringent requirements" than the federal regime. *United States v. Colorado*, 990 F.2d 1565, 1569 (10th Cir. 1993); *see* 42 U.S.C. § 6929; 40 C.F.R. § 271.1(i)(1). But the HWA, New Mexico's EPA-approved RCRA regime, prohibits New Mexico from "identify[ing] or list[ing] any solid waste or combination of solid wastes as a hazardous waste that has not been listed and designated" as such by the EPA. N.M. STAT. ANN. § 74-4-4(A)(1).

So, though RCRA itself does not preclude New Mexico from listing PFAS as a hazardous waste or constituent, New Mexico's HWA binds state regulators to federal standards, which have thus far declined to include PFAS within RCRA's regulatory purview.[2] Nonetheless, in Cannon's 2018 HWA permit, the NMED designated PFAS as a hazardous waste requiring corrective action.

## B

The United States, on behalf of the Air Force, sued the NMED in federal district court, alleging that the 2018 permit's definition of "hazardous waste" was

---

[2]    New Mexico subsequently amended the HWA to define the PFAS-containing flame retardant that Cannon uses as a "hazardous waste." *See* Order, No. 22-2132, at *1 (10th Cir., filed Apr. 18, 2025). We requested supplemental briefing to confirm that the intervening New Mexico legislation would not affect this appeal's justiciability. The parties agree that this appeal—which centers on the scope of § 6961(a)'s procedural-requirements language, and not the propriety of the 2018 HWA permit—has not been rendered moot or otherwise non-justiciable by the HWA amendment. And we agree.

5

"inconsistent with the HWA." Aplt.'s App. ¶ 21 at 14 (Compl., filed Jan. 17, 2019). More technically, the government pleaded that the 2018 permit constituted "'final administrative action' subject to judicial review pursuant to section 74-4-14.A of the HWA," and that "[t]he definition of 'hazardous waste' for the purposes of corrective action stated in [the 2018 permit] is arbitrary, capricious, or an abuse of discretion, not supported by substantial evidence in the record, or otherwise not in accordance with law." *Id.* ¶¶ 17, 28 at 41, 43 (Am. Compl., filed Apr. 2, 2021) (quoting N.M. STAT. ANN. § 74-4-14(A)). The government pleaded that the district court's jurisdiction over its HWA claim was proper under both 28 U.S.C. §§ 1331 and 1345.[3] The government nonetheless filed a parallel action in the New Mexico Court of Appeals, which remains stayed pending disposition of the federal case. *See United States v. N.M. Env't Dep't*, Case No. A-1-CA-37887 (N.M. Ct. App., filed Jan. 17, 2019).

After denying the NMED's motion to dismiss and receiving cross-motions for summary judgment, the district court *sua sponte* "determine[d] it lack[ed] jurisdiction . . . and dismisse[d] the case without prejudice." Aplt.'s App. at 207 (Mem. Op. and Order, filed Aug. 18, 2022). The district court also rendered an alternative holding: even if federal jurisdiction were proper, it would decline to exercise such jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

---

[3] Because we conclude that the district court had jurisdiction under § 1345, we decline to address the parties' § 1331 arguments.

The district court's jurisdictional analysis proceeded in three steps. *First*, the district court held that the HWA vests in the New Mexico Court of Appeals *exclusive* jurisdiction to hear disputes over HWA permitting decisions. *See* N.M. STAT. ANN. § 74-4-14(A). *Second*, the district court concluded that "[t]he HWA, by vesting exclusive jurisdiction for permit appeals in the New Mexico Court of Appeals, precludes other courts from adjudicating such claims." Aplt.'s App. at 208. Noting that Congress may "statutorily vest exclusive administrative appellate jurisdiction in specific courts at the expense of district courts' ordinary jurisdiction" where "Congress'[s] intent to preclude district court jurisdiction is 'fairly discernible in the statutory scheme,'" *id.* (quoting *Sec. People, Inc. v. Iancu*, 971 F.3d 1355, 1362 (Fed. Cir. 2020)), the district court held that RCRA's provisions permitting states to fashion their own RCRA regimes (i.e., 42 U.S.C. § 6926(b)) and waiving federal sovereign immunity against state RCRA enforcement (i.e., 42 U.S.C. § 6961(a)) evidenced Congress's intent to strip federal jurisdiction over HWA appeals.

*Third*, and based on the foregoing, the district court concluded that it lacked jurisdiction over the government's action since § 6961(a) had impliedly repealed § 1345. Aplt.'s App. at 212 ("Congress'[s] general and qualified grant of jurisdiction in 28 U.S.C. § 1345 must give way to Congress'[s] specific and unqualified waiver of sovereign immunity subjecting federal facilities to authorized state hazardous waste permitting schemes."). In other words, the district court held that the HWA's judicial-review provision qualified as a "procedural" requirement "respecting control and abatement of solid waste or hazardous waste disposal and management" which

was binding on the federal government by virtue of the sovereign-immunity waiver. 42 U.S.C. § 6961(a).

Alternatively, the district court reasoned that, *even if* jurisdiction were proper, it would conclude that *Colorado River* counseled abstention "in deference to the parallel state proceeding already before the New Mexico Court of Appeals." Aplt.'s App. at 213. The district court's *Colorado River* analysis turned on the perceived "danger of piecemeal litigation." *Id.* at 215 (quoting *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1234 (10th Cir. 2013)). Recognizing that "there is not an immediate risk of piecemeal litigation" owing to the stay of the New Mexico action, the district court nevertheless concluded that the very "threat" of parallel litigation justified abstention, especially because "[f]ederal law does not provide the rule of decision in this case." *Id.*

The district court thus denied the parties' summary judgment motions and dismissed the case for lack of jurisdiction. The government timely appealed.

## II

We have jurisdiction over the government's appeal from the district court's final order under 28 U.S.C. § 1291. "We review the dismissal of a complaint for lack of subject matter jurisdiction de novo." *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006). We review a district court's exercise of *Colorado River* abstention for an abuse of discretion. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983) ("Under . . . *Colorado River*, of course, the decision whether to defer to the state courts is necessarily left to the discretion of the district court in the

8

first instance."); *D.A. Osguthorpe*, 705 F.3d at 1231 n.11 ("We review district court decisions regarding deferral under the *Colorado River* Doctrine for abuse of discretion.").

**III**

**A**

Section 1345 vests in the federal courts "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345. But § 1345 jurisdiction is subject to exceptions "as otherwise provided by Act of Congress." *Id.* Because the United States commenced these proceedings, § 1345 by default provides for federal jurisdiction. The question is whether an "Act of Congress" (here, RCRA) "otherwise provide[s]" an exception to the default rule. *Id.*

RCRA explicitly contemplates the "[a]pplication of Federal, State, and local law to Federal facilities" like Cannon. 42 U.S.C. § 6961. Section 6961(a) unambiguously provides that federal executive branch departments:

> *shall* be subject to, and comply with, all Federal, *State*, interstate, and local *requirements*, both substantive and *procedural* (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management *in the same manner, and to the same extent, as any person is subject to such requirements*, including the payment of reasonable service charges.

(emphases added). The statute clarifies that the state requirements to which federal executive departments are subject "include, *but are not limited to*, all administrative orders and all civil and administrative penalties and fines." *Id.* (emphasis added).

9

Section 6961(a) thus functions as an express waiver of federal sovereign immunity with respect to state RCRA enforcement in "State or Federal Court." *Id.*

RCRA thus waives Cannon's immunity from HWA enforcement. But that waiver of sovereign immunity merely establishes the predicate for the jurisdictional question before us. Specifically, the question is whether § 6961(a) contemplates that the HWA could confer exclusive jurisdiction on the New Mexico Court of Appeals to hear Cannon's permitting dispute with the NMED, thereby effectively displacing § 1345's default grant of federal jurisdiction over suits commenced by federal agencies.

Congress can strip § 1345 jurisdiction in two ways. *See Colo. River*, 424 U.S. at 808. First, Congress can pass legislation containing an "affirmative showing" of the legislature's "intention to repeal" § 1345. *Id.* (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974)). Alternatively, Congress can effect a "repeal by implication" by enacting a statute that is "irreconcilable" with § 1345 jurisdiction. *Id.* (quoting *Morton*, 417 U.S. at 550). The NMED wisely concedes that RCRA does not affirmatively repeal § 1345. So, we confine our analysis to the implied-repeal inquiry.

Repeal by implication is disfavored. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976). "[W]henever possible, statutes should be read consistently." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1982). Thus, we find implied repeal only "where provisions in the two acts are in irreconcilable conflict." *Id.* (quoting *Radzanower*, 426 U.S. at 154). "Since an implied repeal must ordinarily be

10

evident from the language or operation of a statute," absent a "manifest incompatibility" between the statutes, there is no implied repeal. *Id.* at 470.

In this case, in assessing § 6961(a) and § 1345 for manifest incompatibility, we are bound, "absent a clearly expressed congressional intention to the contrary, to regard each [statute] as effective." *Morton*, 417 U.S. at 551; *see Yellowfish v. City of Stillwater*, 691 F.2d 926, 928 (10th Cir. 1982) ("[T]he intent of the legislature must be 'clear and manifest' to uphold an implied repeal." (quoting *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936))). In other words, if we discern *any* plausible means of harmonizing two statutes, they are *not* manifestly incompatible. Consequently, to uphold the district court's interpretation of § 6961(a)'s effect on federal-agency jurisdiction under § 1345—which would impliedly repeal the latter—it would not be enough for us to conclude that the court's interpretation is a plausible one. Instead, the district court's interpretation must be *the only* plausible construction of the interaction between the two statutes.

**B**

The government attacks the district court's determination that Congress, by passing § 6961(a), "otherwise provided" for exclusive state-court jurisdiction. Aplt.'s Opening Br. at 13. Acknowledging that "RCRA requires federal agencies to comply with state procedural requirements," the government nonetheless maintains that "the HWA's assignment of jurisdiction to state courts of appeals to review state permits is not such a requirement." *Id.*

11

The government begins by emphasizing the breadth of § 1345's jurisdictional language: "Because § 1345 provides district courts with subject-matter jurisdiction in *all* civil cases in which the United States is the plaintiff, the United States may 'sue in the federal court irrespective of subject matter.'" *Id.* at 15 (quoting *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1569 (11th Cir. 1994)). True, § 1345 is subject to exceptions "as otherwise provided by Act of Congress." *Id.* at 16 (quoting 28 U.S.C. § 1345). But, as the government reasons, "the Supreme Court has recognized that the standard for stripping jurisdiction under this language in § 1345 is high." *Id.* (citing *Colo. River*, 424 U.S. at 808–09).

Acknowledging the dearth of authority addressing § 6961(a)'s jurisdictional import, the government directs us to *United States v. Puerto Rico*, 721 F.2d 832 (1st Cir. 1983), which held that an analogous provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1323(a),[4] "does not foreclose the United States from challenging state

---

[4]     The relevant CWA provision provides that:

Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government . . . shall be subject to, and comply with, all Federal, *State*, interstate, and local *requirements*, administrative authority, and *process and sanctions* respecting the control and abatement of water pollution *in the same manner, and to the same extent as any nongovernmental entity* including the payment of reasonable service charges. The preceding sentence shall apply (A) to *any requirement whether substantive or procedural* (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to *any process and sanction*, whether enforced in Federal, State, or local courts or in any other manner.

12

administrative actions in federal court under § 1345." Aplt.'s Opening Br. at 22.
The government acknowledges that the First Circuit bolstered its holding by
highlighting that the CWA included a bespoke federal removal provision, something
the relevant portion of RCRA lacks. But the government urges us to look beyond
that distinction, since "the lack of a removal provision is irrelevant to what forum the
government may choose *as a plaintiff*"—i.e., when the government is "on *offense*."
*Id.* at 23–24 (first emphasis added). Besides, says the government, "even if the
United States were on defense, removal would be proper under 28 U.S.C. § 1442."
*Id.* at 24.

On the other hand, the NMED reads § 6961(a) as dictating that "federal
facilities must not be treated any differently than *any other party*." Aplee.'s Resp.
Br. at 7–8 (emphasis added). Consequently, the NMED construes the government's
invocation of the district court's § 1345 jurisdiction as "a request for special
treatment that is irreconcilable with Congress'[s] command that federal facilities be
subject to 'substantive and procedural' requirements 'in the same manner, and to the
same extent, as any person is subject to such requirements.'" *Id.* at 8 (quoting 42
U.S.C. § 6961(a)). The NMED's argument flows from the premise that "[t]he
procedural-requirements language in § 6961(a) necessarily includes state judicial
review procedures that are part of the statutory scheme through which states enforce
RCRA." *Id.*

---

33 U.S.C. § 1323(a) (emphases added).

Conceding that "there is no binding caselaw holding that § 6961(a) includes state judicial-review procedures in its procedural-requirements language," the NMED nevertheless distinguishes the government's reliance on *Puerto Rico* by homing in on the CWA's bespoke removal provision. *Id.* at 16, 19. In New Mexico's view, "Congress'[s] eschewal of a removal provision in § 6961(a) leads to the only permissible conclusion that, had Congress wanted to immunize the United States from following the same judicial review procedures as other parties when it waived such immunity for other state procedures, it would have said so." *Id.* at 22.

## C

For the reasons detailed below, we conclude that § 6961(a) does not impliedly repeal § 1345. Consequently, the district court properly had jurisdiction over Cannon's lawsuit, and its decision to dismiss *sua sponte* the action for lack of jurisdiction was erroneous.

The district court held that § 6961(a) contemplates exclusive state-court jurisdiction by defining state judicial-review mechanisms—including those vesting in state courts exclusive jurisdiction over state RCRA enforcement—as procedural requirements to which the government is subject under § 6961(a). Even accepting for purposes of this discussion that the district court's reading of what § 6961(a) contemplates is plausible, it is not the *only* plausible reading of that statute. We discern another interpretation of § 6961(a) that contemplates that the statute's procedural-requirements language refers to (as relevant here) a state's procedural mechanisms—like permitting regimes—for enforcing the substantive environmental

14

standards of the state, and not to the state's judicial-review mechanisms. Under this statutory reading, federal courts are *not* impliedly stripped of their jurisdiction under § 1345 by operation of § 6961(a); federal agencies may invoke the jurisdiction of those courts under § 1345.

This is not to say that those federal agencies may not seek relief against state environmental enforcement efforts in state courts, as Cannon has here. After all, by operation of § 6961(a), those agencies are without sovereign immunity and subject to EPA-approved state environmental regimes and their procedural requirements. But it is to say that state courts may not exercise anything more than concurrent jurisdiction over such federal agencies because the procedural-requirements language of § 6961(a) does not encompass a state's judicial-review mechanisms, and, thus, it does not impliedly repeal federal courts' jurisdiction over actions by federal agencies under § 1345. In sum, "[t]here is no irreconcilability [between § 6961(a) and § 1345] in the existence of concurrent state and federal jurisdiction." *Colo. River*, 424 U.S. at 809. It ineluctably follows that the district court's determination of implied repeal was error. *See Morton*, 417 U.S. at 551.

The district court's conclusion that § 6961(a) contemplates exclusive state court jurisdiction flows from its analytically antecedent determination that § 6961(a)'s procedural-requirements language includes state judicial-review mechanisms. Although § 6961(a) does not define the term "requirement," we have previously held that the term encompasses the procedural means by which substantive environmental standards are implemented. *United States v. New Mexico*,

15

32 F.3d 494, 497 (10th Cir. 1994). We thus previously concluded that § 6961(a) empowers the NMED to enforce HWA permitting conditions against federal facilities. *Id.* at 498–99. But it does not inescapably follow from that interpretation of "requirement" that § 6961(a)'s procedural-requirements language *must* be read to include state judicial-review mechanisms. Quite to the contrary.

The First Circuit's assessment of the analogous CWA provision is persuasive and instructive in this regard. In *Puerto Rico*, the First Circuit held that 33 U.S.C. § 1323(a), which requires federal actors to "comply with" state "requirement[s] whether substantive or procedural" "in the same manner, and to the same extent as any nongovernmental entity" did not impliedly repeal § 1345's grant of federal jurisdiction. 721 F.2d at 837–38. Congress's objective in passing § 1323(a) was much the same as its objective in passing § 6961(a). Just as Congress passed § 6961(a) to prevent federal facilities from "dragging their feet by asserting sovereign immunity" rather than face state RCRA enforcement, H.R. Rep. No. 102-111, at 9 (1991), Congress passed § 1323(a) to "[e]nsure that federal facilities comply fully with apposite state laws and regulations" respecting water pollution, *Puerto Rico*, 721 F.3d at 838 (citing S. Rep. No. 95–370, at 67 (1977)). In other words, Congress passed both provisions to prevent federal facilities from leveraging sovereign immunity to frustrate compliance with EPA-approved pollution regimes. But, as *Puerto Rico* strongly suggests, that immunity-stripping congressional purpose does not necessarily stand in tension with allowing federal agencies to invoke the

16

jurisdiction of federal courts to hear challenges to state enforcement of substantive environmental standards.

We read the language of § 6961(a) as having a similar effect to the one the First Circuit discerned in the language § 1323(a)—that is, to permit state environmental regulations to be applied to federal entities *without* impliedly repealing federal courts' jurisdiction under § 1345 to entertain federal entities' challenges to those state regulations.  In other words, Congress's passage of both provisions reflects its conclusion that federal compliance with state environmental regimes would be effectuated by waiving federal sovereign immunity with respect to the procedural components of enforcing state substantive requirements, e.g., permitting conditions.  But, as in *Puerto Rico*, this rationale does not necessarily mean Congress contemplated that federal compliance could only be assured by vesting exclusive jurisdiction in state tribunals to adjudicate federal-agency challenges to state regulatory commands.  More specifically, we do not think Congress necessarily intended to effectuate its purpose of subjecting federal agencies to state environmental regulatory regimes by including state judicial-review mechanisms within the procedural-requirements language of § 6961(a).

Instead, as in *Puerto Rico*, we conclude here that state-court adjudication is not "so critical to the teleology of federal compliance that the dictates of 28 U.S.C. § 1345 must necessarily be overridden."  721 F.3d at 838; *see North Carolina v. United States*, 7 F.4th 160, 164 (4th Cir. 2021) (noting that concurrent federal jurisdiction "does not prevent states from bringing enforcement actions or levying

17

penalties against federal facilities" under an analogous provision of the Clean Air Act, 42 U.S.C. § 7604(e)).  It is true that, unlike RCRA, the CWA contains a bespoke removal provision that "unequivocally grants to the United States the right to remove compliance proceedings brought against it to the district courts."  *Puerto Rico*, 721 F.3d at 838.  But whatever weight the First Circuit placed on the CWA's removal provision, RCRA's lack of an analogous provision presents a distinction without a difference.  This case does not concern a compliance proceeding brought *against* the government, but a pre-enforcement action brought *by* the government.  Consequently, the government's removal options are irrelevant.[5]

In sum, we read § 6961(a)'s procedural-requirements language as *not* including state judicial-review provisions.  Accordingly, we reject the district court's holding that RCRA impliedly repealed § 1345's grant of concurrent federal jurisdiction.

---

[5]    Even if this case did concern a state-court compliance proceeding, while the government would be without a RCRA-specific removal provision, it would still remain entitled to removal under 28 U.S.C. § 1442(a)(1), which provides for removal of "[a] civil action . . . that is commenced in a State court and that is against or directed to. . . . [t]he United States or any agency thereof."  Section 6961(a) does not impliedly repeal § 1442 for the same reasons it does not impliedly repeal § 1345: federal compliance with state environmental regulations is not contingent on state courts' monopoly control of enforcement actions.  *See North Carolina*, 7 F.4th at 164.

## IV

### A

We now address and reject the district court's alternative conclusion that *Colorado River* abstention was appropriate. "[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them'" by Congress. *Moses H. Cone*, 460 U.S. at 15 (quoting *Colo. River*, 424 U.S. at 817); *see Cohens v. Virginia*, 19 U.S. 264, 404 (1821). Our obligation stems from the "undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989). The obligation is *virtually* unflagging, but the Supreme Court has recognized "exceptional circumstances" under which federal courts should abstain from exercising jurisdiction "for reasons of wise judicial administration." *Colo. River*, 424 U.S. at 813, 818. The coexistence of parallel proceedings in federal and state courts is a necessary predicate for *Colorado River* abstention. *See Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994).

We have identified a list of non-exhaustive factors bearing on the propriety of *Colorado River* abstention. *See id.* Those factors include:

1. "[W]hether either court has assumed jurisdiction over property";

2. "[T]he inconvenience of the federal forum";

3. "[T]he desirability of avoiding piecemeal litigation";

4. "[T]he order in which the courts obtained jurisdiction" (i.e., priority);

19

5. "[T]he vexatious or reactive nature of either the federal or the state action";

6. "[W]hether federal law provides the rule of decision";

7. "[T]he adequacy of the state court action to protect the federal plaintiff's rights."

*Id.* "No single factor is dispositive." *Id.* Moreover, the factors are not a "mechanical checklist." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). Instead, courts should carefully balance the factors as they apply to the facts of a given case, with a heavy thumb on the scale weighing *against* abstention. *Id.*

**B**

The government maintains that "by declining to decide the fully briefed federal case at the expense of reactivating the long-dormant state-court litigation, the district court's dismissal wastes judicial resources contrary to the efficiency principle at the core of *Colorado River*." Aplt.'s Opening Br. at 14. More specifically, the government argues that the district court's alternative abstention holding relied primarily on the "avoidance of piecemeal[-]litigation" factor, but "misunderstood what types of 'piecemeal litigation' the *Colorado River* doctrine is designed to avoid." *Id.* at 32.

The district court deemed the risk of piecemeal litigation substantial because this case requires a federal court to apply state law, which could entail certifying state-law questions to the New Mexico courts. *Id.* at 33; *see* Aplt.'s App. at 216 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). But on the government's read, *Colorado River*'s piecemeal-litigation factor is concerned *not* with the applicable rule

20

of decision, but instead with avoiding duplicative litigation. The government maintains that its protective filing of a long-dormant action in New Mexico court does not raise a serious threat of duplicative litigation.

The NMED, by contrast, contends that (1) the district court correctly interpreted *Colorado River*'s piecemeal-litigation factor to include the "risk of developing a body of [state common law] which applies to all permit holders except the United States," and (2) the threat of piecemeal litigation would persist *even if* the government prevails in federal court, because dismissal of the state action is not guaranteed. Aplee.'s Resp. Br. at 28–29 (quoting Aplt.'s App. at 216).

Even if we were to conclude that abstention under *Colorado River* was not appropriate, the NMED would urge us to affirm under two alternative abstention doctrines: those articulated in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Though it recognizes that neither party nor the district court addressed *Brillhart* or *Burford* below, the NMED nevertheless maintains we may in our discretion affirm under either of its late-blooming abstention theories. The government urges us not to reach the NMED's *Brillhart* and *Burford* arguments.

### C

We conclude that the district court abused its discretion by misinterpreting *Colorado River*'s piecemeal-litigation factor and, accordingly, determine that its abstention ruling was erroneous. At the outset, we decline, in our discretion, to

21

address the NMED's late-blooming *Brillhart* and *Burford* arguments, leaving the district court free to address those doctrines (if applicable) on remand.

The necessary predicate for *Colorado River* abstention—parallel state and federal proceedings—is patent. Here, the government sued the NMED in both New Mexico and federal court alleging that the terms of Cannon's 2018 HWA permit exceeded the NMED's authority. The parties are litigating "substantially the same issues in different forums," *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991); so, the proceedings are parallel for *Colorado River* purposes.

The district court concluded that the threat of piecemeal litigation "tip[ped] the scales strongly in favor of abstention." Aplt.'s App. at 215. Specifically, the district court determined this was so because the circumstance before it was "unique"— where a state-law issue must be "analyzed under state-law standards" and where "Congress has expressly waived sovereign immunity." *Id.* at 216. In such a circumstance, the district court reasoned, "it is wise that the state courts adjudicate the issue." *Id.* But, in our view, the district court fundamentally misapprehended "the danger of piecemeal litigation" in the *Colorado River* context. *D.A. Osguthorpe*, 705 F.3d at 1234.

The piecemeal-litigation factor is not designed to prevent federal courts from applying state law but instead to prevent *duplicative* litigation that wastes judicial resources and portends inconsistent federal and state interpretations of identical rules of decision. *See id.* at 1233–34. The district court acknowledged that "avoidance of

22

duplicative litigation . . . is at the core of the *Colorado River* doctrine," Aplt.'s App. at 213–14 (quoting *D.A. Osguthorpe*, 705 F.3d at 1233), but nonetheless abstained because it could not discern, "without further consideration," whether the New Mexico law questions presented by this case would "necessitate reasoned guesses, or may even require certification," *id.* at 216.

In view of a district court's well-established obligation to exercise its congressionally endowed jurisdiction, *Cohens*, 19 U.S. at 404, we deem the district court's step back from exercising its jurisdiction to avoid predicting state law mistaken and improper. We thus remand for further consideration of the relevant state-law questions. The district court's analysis reflects a misunderstanding of the piecemeal-litigation factor of our *Colorado River* analysis. *See United States v. Ellis*, 23 F.4th 1228, 1238 (10th Cir. 2022) ("An error of law is per se an abuse of discretion." (quoting *United States v. Lopez-Avila*, 665 F.3d 1216, 1219 (10th Cir. 2011))). Even if *Erie* predictions or certifications to state court are required, *Colorado River* abstention remains inappropriate. And so long as the state litigation brought by the government remains dormant, there is simply *no* risk of duplicative— i.e., "piecemeal"—litigation.

Thus, we reject the district court's alternative holding that *Colorado River* abstention was justified.

**V**

For the foregoing reasons, we **reverse** the district court's order dismissing this action and **remand** for further proceedings consistent with this order and judgment.

Entered for the Court

Jerome A. Holmes
Chief Judge